```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF TEXAS
                        FORT WORTH DIVISION

GARY CLARKE                     §
                                §
VS.                             §
                                §  CIVIL ACTION NO. 4:08-CV-190-Y
ALLIANZ GLOBAL RISKS            §
US INSURANCE COMPANY f/k/a      §
ALLIANZ INSURANCE COMPANY       §
```

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### (with special instruction to clerk of Court)

Pending before the Court are Defendant's Amended Motion for Summary Judgment (doc. #13) and Amended Motion for Judicial Notice (doc. #15).[1]  After review, the Court concludes that Plaintiff has presented no evidence that he complied with the conditions precedent under the policy at issue.  The Court further concludes that the evidence establishes that Defendant suffered prejudice as a matter of law.  Consequently, the motion for summary judgment will be GRANTED.[2]

I. Background

In March 2002, Plaintiff, Gary Clarke, purchased a go-cart made by Murray, Inc. ("Murray").  On March 31, while the go-cart was

---

[1] Defendant's original motions for summary judgment and judicial notice (docs. ## 8 & 10) still appear as pending motions on the docket.  Because Defendant has filed amended motions, the clerk of Court is DIRECTED to terminate Defendant's original motions as moot.

[2] After review of the Amended Motion for Judicial Notice, and noting that Plaintiff has not filed a response in opposition and, indeed, relies on many of the documents for which Defendant seeks judicial notice in responding to the summary-judgment motion, the Court GRANTS the motion for judicial notice.  *See* FED. R. CIV. P. 201; *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-31 (5th Cir. 1998) (noting that courts take judicial notice of the filings in another court "to establish the fact of such litigation and related filings"); *Davis v. Bayless, Bayless & Stokes*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (no error in taking judicial notice of state-court orders).

being driven by Clarke's friend, the go-cart's frame gave way.  This resulted in a collision that broke Clarke's leg.

Based on this incident, Clarke filed suit in the 355th Judicial District Court, Tarrant County, Texas, against Murray, as the go-cart's manufacturer, and Wal-Mart Stores, Inc., as its retailer.[3] As to Murray, Clarke alleged that the go-cart was defectively manufactured or designed.  At the time of the accident and the filing of the Underlying Suit, Murray had liability insurance with Defendant, Allianz Global Risks U.S. Insurance ("Allianz").

Under the policy's self-insured retention provision, coverage is extended only for liability in excess of a $500,000 retention applicable to each occurrence.  (Def. Mot. App. at AIC0129.) Amounts otherwise payable under the policy, including expenses incurred in investigating and defending any claim or suit, are first charged against the self-insured retention.  (*Id.*)

The policy also creates "the right and duty" on the part of Allianz to defend Murray against any suit seeking covered damages, including those for personal injury. (*Id.* at AIC098.)  The policy further states certain conditions to Allianz's obligations under the policy including one that Murray, as the insured, cannot, except at its own cost, "incur any expense, other than for first aid" without Allianz's consent.  (*Id.* at AIC0107, ¶2.d.)  The policy requires Murray to "[i]mmediately send [Allianz] copies of any demands, notices, summonses or legal papers received in connection with [a] claim or suit" ("the Notice Provision").  (*Id.* at AIC0107, ¶2.c(1).) Murray is further required to "[c]ooperate with [Allianz] in the investigation or settlement of [a] claim or defense against [a]

---

[3] *Clarke v. Murray, Inc.*, No. CA2004114 ("the Underlying Suit").

2

suit" ("the Cooperation Provision").  (*Id.* at AIC0170, ¶2.c(1).) Finally, the policy made clear that Allianz could not be sued or joined as a party in a suit for damages against Murray absent compliance with the terms and conditions of the policy.  (*Id.* at AIC0107, ¶3.)

The Underlying Suit was filed March 22, 2004. (*Id.* at AIC0002.) Murray and Clarke reached a settlement by way of mediation in July 2004.  (*Id.* at AIC0009-0011.)  Under the settlement, Murray was to pay Clarke $300,000.  (*Id.*)  But before the settlement was consummated, in November 2004, Murray filed for chapter 11 bankruptcy. (*Id.* at AIC0013-0016.)

By all accounts, Allianz had no notice of the Underlying Suit, the settlement, or the bankruptcy until February 3, 2005.  (*Id.* at AIC0159 (Holland Aff.).)  This notice came in the form of a letter from Aon Risk Services ("Aon") that stated that the Underlying Suit had settled for $300,000.  (*Id.*)  Aon is an insurance agency that sells Allianz policies and Aon sold the policy at issue in this case to Murray.  (Resp. App. at 12-13, 18-19, 23-25.)  After being contacted by Clarke's attorney, Bart Behr, in connection with the Underlying Suit, Aon provided Behr with the purported address of Allianz's claims department--2601 Research Forest Dr., The Woodlands, Texas 77381 ("The Woodlands Address").  (*Id.* at 5 (Behr Aff.).)

Clarke filed a proof of claim in Murray's bankruptcy in May 2005, asserting an unsecured claim of $850,000.  (Mot. App. at AIC0018.)  Murray objected to the claim but eventually withdrew its objection and agreed with Clarke to settle the claim from the Underlying Suit for $473,689. (*Id.* at AIC0037-0068.)  An order of

3

the bankruptcy court approving the settlement was entered January 24, 2006.  (*Id.* at AIC0066.)

Murray was not dismissed from the Underlying Suit after filing for bankruptcy. (*Id.* at AIC0070.)  Rather, the bankruptcy court's order allowed Clarke to proceed against Murray in name only, with any recovery by Clarke coming from any available insurance, a party defendant other than Murray, or the post-confirmation estate. (*Id.*) Nor did Murray's filing for bankruptcy discharge Allianz's duties under the policy. (*Id.* at AIC0107.)  On September 21, 2005, notice was sent to the parties in the Underlying Suit that the case was set for trial beginning March 20, 2006.  (*Id.* at AIC0070.)  Allianz was not a party in the Underlying Suit.  On January 27, 2006, Murray's retained counsel filed a motion to withdraw. (*Id.* at AIC0072-0075.) On February 1, 2006, Behr sent to The Woodlands Address provided by Aon a copy of the motion in the bankruptcy court to approve the settlement between Clarke and Murray, the petition in the Underlying Suit, the motion of Murray's attorney to withdraw, and the September 2005 trial notice. (*Id.* at AIC0088-0090.)

Neither Murray nor an attorney on its behalf appeared when the trial began in the Underlying Suit on March 20, 2006.  As a result, a default judgment was entered against Murray for $950,000. (*Id.* at AIC0077-0078.)  Behr sent a second letter, dated March 21, to The Woodlands Address in an attempt to notify Allianz of the default judgment.  (*Id.* at AIC0092.)  In March 2008, Clarke filed the instant suit claiming to be a third-party beneficiary of Murray's policy with Allianz.  Murray seeks to recover the difference between the self-insured retention and the default judgment.

II.  Discussion

    A.   Applicable Law

        1.  Summary-Judgment Standard

When the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," summary judgment is appropriate. FED. R. CIV. P. 56(c).  An issue is considered "genuine" if "it is real and substantial as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo County.*, 246 F.3d 481, 489 (5th Cir. 2001).  Facts are considered "material" if they "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990).  Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party.  *Id.; Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.  *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment.  *Skotak v. Tenneco*

*Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  Thus, parties should "identify specific evidence in the record, and . . . articulate" precisely how that evidence supports their claims. *Forsyth v. Barr*, 19 F.3d 1527, 1536 (5th Cir. 1994).  Further, the court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.

To prevail on a summary-judgment motion, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has carried its summary-judgment burden, the respondent must go beyond the pleadings and by his own evidence set forth specific facts showing there is a genuine issue for trial. *Arbaugh v. Y&H Corp.*, 380 F.3d 219, 222 (5th Cir. 2004) (citing *Celotex*, 477 U.S. at 324); *see also* FED. R. CIV. P. 56(e).  This burden is not satisfied by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

    2.  Conditions Precedent in Insurance Policy

As noted above, Murray's policy with Allianz states that as a condition to coverage, Murray must immediately send to Allianz a copy of any demands or legal documents received in connection with a covered suit and must cooperate with Allianz in defending the

suit. Under Texas law, an insurance contract is interpreted according to the general principles of contract construction. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). Thus, insurance contracts are subject to the "fundamental principle of contract law . . . that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Id.*

The sort of conditions to coverage stated in Murray's policy with Allianz are treated as conditions precedent under Texas law. *See Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 (Tex 1993). But an insurer is not relieved of liability by the mere failure of the insured to comply with such conditions. *See id.* Instead, an insurer seeking to escape liability must establish that the failure to comply with the condition caused it to be "prejudiced." *See id.*; *see also Special Risk Servs. Group, L.L.C. v. Trumble Steel Erectors, Inc.*, No. 5:04-CV-289-C, 2006 U.S. Dist. LEXIS 7681, at *17 n.3 (N.D. Tex. Feb. 28, 2006) (noting Texas law requires insurer to show prejudice as part of a defense under a "failure to cooperate" provision).

Texas courts generally treat prejudice as a question of fact. *See Coastal Ref. & Mktg. v. United States Fid. & Guar. Co.*, 218 S.W.3d 279, 287 (Tex. App.--Houston [14th Dist.] 2007, pet. denied) (*citing Struna v. Concord Ins. Servs., Inc.*, 11 S.W.3d 355, 359 (Tex. App.--Houston [1st Dist.] 2000, no pet.); *P.G. Bell Co. v. United States Fid. & Guar. Co.*, 853 S.W.2d 187 (Tex. App.--Corpus Christi 1993, no writ)). But "an insurer that is not notified of suit against its insured until a default judgment has become final, absent actual knowledge of the suit, is prejudiced as a matter of

law." *Cruz*, 883 S.W.2d at 166; *see also Coastal Ref. & Mktg.*, 218 S.W.3d at 288 (collecting cases and other authority). *But see Gibbons-Markey v. Tex. Med. Liab. Trust*, 163 Fed. Appx. 342, 344-46 (5th Cir. 2006) (concluding insurer not prejudiced by insured's failure to provide notice of claim where insured was not properly served and, therefore, was unaware of the suit); *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 867 (Tex. App.--Corpus Christi 1998, pet. denied) (recognizing a defense to late notice where the insured was unaware of the proceedings until entry of default judgment). "Generally, actual knowledge of the claim against an insured does not equate to actual knowledge of suit against an insured." *Cruz*, 883 S.W.2d at 165 n.2 (citing *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 466 (Tex. App.--Dallas 1991, no writ)).

B. Analysis

Clarke makes two basic arguments in seeking to prevent summary judgment in favor of Allianz based on the policy's conditions precedent. First, Clarke argues that proper notice was provided to Allianz at The Woodlands Address. Second, Clarke argues that Allianz had actual notice of the suit.

1. Notice to The Woodlands Address

Clarke contends that he received The Woodlands Address for Allianz from Aon, through which Murray had purchased the Allianz policy. Behr then sent to Aon and The Woodlands Address a letter along with a copy of the motion in the bankruptcy court to approve the settlement between Clarke and Murray, the petition in the Underlying Suit, the motion of Murray's attorney to withdraw, and

the September 2005 trial notice. (*Id.* at AIC0088-0090.) After a default judgment was entered in the Underlying Suit, Behr sent a second letter to Aon and to Allianz at The Woodlands Address.

Allianz insists that it has never maintained an office at The Woodlands Address to which Behr's letters were sent. (*Id.* at AIC0160.) And there is no evidence before the Court that would support any other conclusion. To the contrary, the evidence establishes that the address belongs to Hewitt Associates, LLC, an independent company with which Allianz contracted to handle employee benefits. (Resp. App. at 47-48.)

But Clarke also contends that Allianz received notice and the documents required by the policy through Aon. There is no evidence in the record, however, that would support a conclusion that Aon was Allianz's agent. As one Texas court has explained, "generally speaking, an insurance broker is considered the agent of the insured [and] if the insured reports a claim to the broker, but the broker fails to report it to the insurer, the insured is not relieved of his notice obligations." *Duzich v. Marine Office of Am. Corp.*, 980 S.W.2d 857, 865 (Tex. App.–Tex App. Corpus Christi 1998, pet. denied); *see also* JAMES B. SALES, ET AL., 4 TEXAS TORTS AND REMEDIES § 70.40 (2009) (noting that as a result of the general rule that an insurance broker is an agent of the insured and not the insurer, notice to an insurance broker does not satisfy a requirement of notice to the insurer unless the broker had apparent authority to receive claims). An insurance company might be estopped from denying that a broker is its own agent under certain circumstance. *See Duzich*, 980 S.W.2d at 865. For example, a broker might be treated as the insurer's agent if the broker has a history of transmitting claims

9

or providing notice of claims to the insurer that are subsequently paid by the insurer. *See id.*

Clarke has produced no evidence that would support a conclusion that either Aon or Hewitt were authorized or apparently authorized to act as Allianz's agent regarding claims handling. Clarke has pointed to portions of a deposition of an officer of Aon (not of Allianz) in which he refers to Aon as Allianz's "agent." (Resp. App. at 12-13, 18-19, 23-25.) But these are references to Aon's role as an entity authorized to sell insurance policies issued by Allianz (i.e., an insurance "broker" or "agent"), not as an entity authorized or apparently authorized to represent or bind Allianz in regard to other matters, such as claims handling (i.e., a legal "agent"). *See* TEX. INS. CODE § 4001.003 (defining "agent" as "a person who is an authorized agent of an insurer . . . by soliciting, negotiating, procuring, or collecting a premium on an insurance [contract]"); *see also* TEX. INS. CODE § 4001.051 (listing acts that "constitut[e] acting as agent" as a matter of law and omitting claims handling); *cf. Gen. Am. Life Ins. Co. v. Gant*, 119 S.W.2d 693, 695-96 (Tex. Civ. App.--Austin 1938, writ dism'd) (stating that "where by prearrangement, or where the employer is given apparent authority to receive or collect premiums by deducting same from the employee's pay or earnings, he is regarded as the agent of the insurer *in the collection of the premiums*") (emphasis added); *Horne v. Charter Nat'l Ins. Co.*, 614 S.W.2d 182, 184 (Tex. Civ. App.--Fort Worth 1981, writ ref'd n.r.e.) (stating that Texas Insurance Code's definition of "agent" is for the purposes of the code and is not dispositive of who an insurance agent represents); JAMES B. SALES, ET AL., 4 TEXAS TORTS AND REMEDIES § 70.10 (noting that Texas courts refused to conclude that former Art. 21.02 automatically established an

insurance broker as an agent of the insurer but have instead looked to general principles of agency law in determining whether a broker's actions bind an insurer) (citing *Guthrie v. Republic Nat'l Ins. Co.*, 682 S.W.2d 634, 637 (Tex. App.--Houston [1st Dist.] 1984 writ ref'd n.r.e.) (insurer not bound by insurance agent's misrepresentations despite Art. 21.02 because agent was mere soliciting agent without actual authority)). Accordingly, the Court concludes that the letters and documents sent by Behr to Aon and The Woodlands Address on February 1 and March 21, 2006, are insufficient to fulfill the policy's notice and cooperation provisions as a matter of law.

### 2. Actual Notice

Clarke also argues that Allianz had actual notice of the Underlying Suit before the default judgment was entered. Clarke points out that Allianz's own summary-judgment evidence establishes that Allianz was made aware of the Underlying Suit by a letter from Aon on February 3, 2005. (*Id.* at AIC0159, ¶5.) The summary-judgment evidence also indicates that Allianz was notified of the motion to approve the settlement in Murray's bankruptcy case on December 27, 2005. (*Id.* at AIC00159, ¶7.)

Allianz counters that neither of these notices was sufficient to make it aware that Clarke intended to proceed with the Underlying Suit. According to Allianz, the fact that it did not receive notice that Murray's counsel withdrew or that the Underlying Suit had been set for trial establishes that the policy's notice and cooperation provisions were not fulfilled.

And Allianz's arguments imply that the information it did receive dispelled any notion Allianz might have had that Clarke

would pursue the Underlying Suit. Allianz notes that the February 3, 2005, letter from Aon indicated that the suit had settled for $300,000. (*Id.* at AIC0159, ¶5.) And the motion to approve the settlement in Murray's bankruptcy indicated that Clarke's claim against Murray had been settled for $473,689. (*Id.* at ¶8.) Because neither of these amounts exceeded the self-insured retention, Allianz concluded the settlements did not invoke its policy. (*Id.* at ¶¶6, 8.)

Clarke responds that once Allianz received a copy of the motion to approve the settlement in Murray's bankruptcy, Allianz knew that Murray did not go through with the settlement in the Underlying Suit. And the bankruptcy motion contained language that clarified that the settlement between Murray and Clarke did not prejudice Clarke's right to pursue his claims in the Underlying Suit against others. Specifically, the motion stated:

> Fixing the Allowed Claim in accordance with the foregoing is without prejudice or effect to the Claimant's right to pursue the claim asserted in the [proof of claim] against any applicable insurance company with Murray, Inc., as the nominal defendant only, and is also without prejudice to the right of any other party, including but not limited to any insurer providing excess liability insurance coverage to Murray, Inc., to defend or oppose such claim on any ground.

(*Id.* at AIC0049.) Thus, Clarke maintains that Allianz had sufficient knowledge of the Underlying Suit to create a fact issue as to whether Allianz suffered prejudice due to Murray's failure to fulfill the notice and cooperation provisions.

Texas law recognizes the fundamental contract principle that "[a]n unambiguous contract will be enforced as written." *Sacks v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam). The plain

language of the policy requires Murray, as the insured, to provide Allianz with notice and documentation of any covered claim and cooperate in defending against such claim. But it is an equally fundamental principle that only a "material breach" by one party relieves the other of its obligation under a contract. Further, an insurer must establish that it suffered prejudice in connection with an insured's failure to comply with the sort of conditions precedent at issue in this case. Thus, Texas courts have concluded that an insurer may be held liable when the claimant has provided the insurer with notice of the claim or the insurer otherwise has actual knowledge of the suit. *See*, *e.g.*, *P.G. Bell Co. v. United States Fidelity & Guar. Co.*, 853 S.W.2d 187, 192 (Tex. App.--Corpus Christi 1993, no writ) (reversing summary judgment in favor of insurer because of a fact question as to whether insurer suffered prejudice when insurer had actual notice of suit).

The Court has not found, nor has Allianz cited, precedent on all fours with the current case. That is, the Court is unaware of any case addressing the adequacy of notice or cooperation and the presence of prejudice when the insurer has received documents that at once provide the insurer with notice of a claim but create the impression that the claim has been settled below a self-insured retention. But after a review of comparable Texas cases on notice and prejudice, the Court concludes that the February 3, 2005, letter from Aon and the December 27, 2005, notice of the hearing on the bankruptcy settlement were insufficient to notify Allianz of the Underlying Suit and that Allianz was prejudiced.

13

In cases where courts have concluded that notice and cooperation by a claimant created a fact issue as to whether an insurer suffered prejudice, the claimant provided clear notice well in advance of trial such that the insurer was at least arguably given an opportunity to prepare, appear, and present a defense.  For example, in *P.G. Bell Co. v. United States Fid. & Guar. Co.*, the insurer acknowledged that the claimant in the underlying suit against the insured had provided the insurer a copy of the underlying petition three years prior to trial and that the insurer had discussed the case with the claimant's attorney and refused to provide a defense in the underlying suit. *P.G. Bell Co.*, 853 S.W.2d at 192.  And in *Allstate Ins. Co. v. Pare*, the court of appeals concluded that there was sufficient evidence to support a jury's finding that the insured's failure to forward "suit papers" to its insurer did not prejudice the insurer.  The court based this conclusion on evidence that: (1) the insured contacted the insurer within days of the accident giving rise to the underlying suit and contacted the insurer several more times regarding the potential for a suit; (2) the attorney for the plaintiff in the underlying suit contacted the insurer on several occasions regarding the suit and a potential settlement and had provided the insurer with a copy of the pleadings and notice that the insured had been served; and (3) the insurer had contemplated settling the underlying suit and was aware of a default judgment against another defendant.  *Allstate Ins. Co. v. Pare,* 688 S.W.2d 680, 682-84 (Tex. App.--Beaumont 1985, writ ref'd n.r.e.).

The instant case presents a far different story.  Here the only evidence pointed to by Clarke regarding the February 3 and December 27, 2005, "notices" is the affidavit of Bruce Holland, an Allianz

14

claims analyst, contained in Allianz's appendix in support of its summary-judgment motion. Even assuming Holland's statement is competent evidence of the content of the February 3 letter,[4] Holland's statements are not the sort of evidence relied on by the courts in *P.G. Bell Co.* and *Pare*.

In *Members Ins. Co. v. Branscum*, the court of appeals concluded that the insurer had been prejudiced by the entry of a default judgment against its insured despite the fact that the attorney for the plaintiff in the underlying suit had notified the insurer of the suit. The court based this conclusion on the fact that, the insurer's actual notice of the suit notwithstanding, the insured had still failed in its obligation to cooperate in mounting a defense in that the insurer had never been provided the pleadings in the underlying suit. *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 466-67 (Tex. App.--Dallas 1991, no writ). And as to the notice issue, the court explained that the fact that a claimant notified the insurer that it had filed suit did not trigger any duty by the insured or the insurer to take any defensive action. Instead,

> It is the service of citation upon the insured which imposes on the insured the duty to answer to prevent a default judgment. No duty is imposed on an insurer until its insured is served and sends the suit papers to the insurer. This action by the insured triggers the insurer's obligation to tender a defense and answer the suit.

*Branscum*, 803 S.W.2d at 466-67; *cf. Cruz*, 883 S.W.2d at 165 n.2 (citing *Branscum* with approval).

---

[4] *Cf.* FED. R. EVID. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress.")

15

In his affidavit Holland states that "Allianz first received notice of the [Underlying Suit] by letter dated February 3, 2005, from Aon Risk Services, which notice stated that the Underlying Lawsuit settled at mediation." (Mot. App. at AIC0159.) Rather than present evidence that Allianz was immediately provided notice of the suit and copies of all papers related to the suit as required by the policy, Clarke has presented evidence that Allianz was merely made aware that a suit was filed and, indeed, was led to believe that such suit had been settled for an amount below the self-insured retention. Because Allianz was not provided the notice regarding the actions taken in the Underlying Suit as required by the policy, its duty to defend was not triggered. *Cf. Branscum,* 803 S.W.2d at 466-67 (explaining that despite actual notice of suit, insurer was prejudiced by insured's failure to comply with policy's notice provision because only notice that insured has been served gives rise to the insurer's duty to defend). Clarke has not produced evidence or even argued that Allianz was given a copy of the pleadings from the Underlying Suit, with the February 3 letter or otherwise, or produced evidence of alternate sources of information available to Allianz that would lessen the burden of Murray's failure to cooperate. *Cf. Struna v. Concord Ins. Serv., Inc.*, 11 S.W.3d 355, 360 (Tex. App.--Houston [1st Dist.] 2000, no pet.) (concluding that a fact issue existed on the question of prejudice to the insurer resulting from the insured's failure to cooperate where there was evidence that, had the insurer performed its own

16

investigation, it would have concluded that its insured was at fault). Nor has Clarke pointed to the sort of evidence relied upon by the courts in *Pare* and *P.G. Bell Co.*; for example, evidence that Behr and an Allianz representative discussed the case or that Allianz engaged in settlement negotiations.

Although Clarke argues that Allianz should have inferred from the notice of hearing on the motion to approve settlement in Murray's bankruptcy that the earlier settlement of the Underlying Suit had fallen through, such inference is not enough to obligate Allianz to take action. Again, the notice of the motion in Murray's bankruptcy case merely made Allianz aware that a suit had been filed. And, again, the document at issue indicated that the suit had been settled for an amount--$473,689--that was within the self-insured retention. And, just as with the February 3 letter, the bankruptcy notice does nothing to account for Murray's complete failure to cooperate with Allianz in presenting a defense.

Clarke has presented no evidence that Murray provided the notice or cooperation required under the policy at issue. And the evidence Clarke has presented regarding the information that was available to Allianz does not amount to actual knowledge of suit against an insured, nor does it account for Murray's complete failure to cooperate in defending against Clarke's suit. Allianz was, therefore, prejudiced by the default judgment in the Underlying Suit as a matter of law. *See Cruz,* 883 S.W.2d at 166; *Branscum*, 803 S.W.2d at 467 (concluding that a lack of notice until after a

default judgment and the insured's complete failure to cooperate prejudiced the insurer as a matter of law).

III. Conclusion

Accordingly, the Court concludes that Murray did not fulfill its duty to provide Allianz with notice of a suit or to cooperate in mounting a defense. Further, Allianz was prejudiced by these failures. As a result, the Court GRANTS Allianz's motion for summary judgment.

SIGNED July 14, 2009.

*Terry R. Means*
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE